IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| EARNISE PAM and SASHA BOYD, ) | | |
| Special Co-Administrators of the Estate of ) | | |
| Rodriquez D'Aundre Pam, ) | | |
| ) | | |
| Plaintiffs ) | Civil Action No. _____ | |
| ) | | |
| CITY OF EVANSVILLE, INDIANA; ) | *Jury Trial Demanded Under* | |
| EVANSVILLE POLICE DEPARTMENT; ) | *Fed. R. Civ. P. 38(b)* | |
| BILLY BOLIN, in his capacity as Chief of Police ) | | |
| of the Evansville Police Department; ) | | |
| JOHN MCQUAY, in his individual capacity and as ) | | |
| an Evansville police officer; and ) | | |
| CORY OFFERMAN, in his individual capacity and ) | | |
| as an Evansville police officer, ) | | |
| ) | | |
| Defendants. ) | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

For their Complaint, Plaintiffs, by and through her attorney, state and allege as follows:

### INTRODUCTION

1. This Complaint arises out of the personal injury and wrongful death of Rodriquez D'Aundre Pam ("Rodriquez"). On November 8, 2020, Rodriquez was shot multiple times by Officer Cory Offerman ("Offerman") and Sergeant John McQuay ("McQuay"), officers of the Evansville Police Department ("EPD"). Offerman and McQuay are sometimes referred to as the "Officers." Rodriquez died from the gunshot wounds.

### JURISDICTION

2. The Court has subject matter jurisdiction of this case under 28 U.S.C. §1331 (federal question jurisdiction) because Plaintiff brings this action under 42 U.S.C. §§1983 and 1988(a) to vindicate rights guaranteed by the Constitution, statutes, and common law of the

United States of America. The Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims under 28 U.S.C. §1367(a) because those claims form part of the same case or controversy.

## VENUE

3. Venue is proper under 28 U.S.C. §1391(b)(1) and (2) because Defendants reside and the events giving rise to the Plaintiff's claims took place in this judicial district.

## PARTIES

4. At the time of his death, Rodriquez was a 33-year-old person who lived in Evansville, IN. Rodriquez was survived by his dependent children, Tre'Veah Pam; Makasia Mumford, Na'Zyia Pam, Nyasia Pam, and RaNiya Hawes, and his parents, Earnise Pam and Mamie Cunningham.

5. On May 3, 2022, a petition for the appointment of a special administrator was filed in the Vanderburgh Superior Court, Probate Division, Cause No. 82D04-2205-EM-000275 (the "Estate"). On May 9, 2022, Earnise Pam and Sasha Boyd were appointed Co-Special Administrators of the Estate and authorized to take all actions necessary for the purpose of collecting damages for the personal injury and wrongful death of Rodriquez Pam, with all authority granted a personal representative under Indiana law. As Special Co-Administrators of the Estate, Earnise Pam and Sasha Boyd have the authority to commence and maintain this lawsuit.

6. The City of Evansville, Indiana (the "City") operates, manages, directs, and controls the EPD.

7. Billy Bolin ("Chief Bolin") is the Evansville Police Department's Chief of Police.

8. On November 8, 2020, McQuay and Offerman were employees of the EPD. In all instances described in this Complaint, McQuay and Offerman acted within the scope of their employment as officers of the EPD.

## NOTICE OF TORT CLAIM

9. On May 5, 2021, a Notice of Tort Claim (the "Notice") was served according to the requirements of IC 34-13-3-8.

## FACTUAL ALLEGATIONS

10. On November 8, 2020, at approximately 8:19 p.m., Sergeant McQuay and Officer Offerman responded to a dispatch for a 911 call placed by Heather Geier ("Geier") from her residence at 1116 Cherry Street, Evansville, Indiana.

11. Geier stated in her 911 call that a man was at her back door with a gun. She also believed that the man would shoot her dog. As officers arrived on the scene, Geier falsely claimed to the 911 dispatcher that the man shot her dog. No shots had been fired, her dog was unharmed, and the man at her back door never fired a gun.

12. The man in Geier's back yard was Rodriquez Pam. Rodriquez was an extremely intoxicated individual and he posed no viable threat to himself or anyone else around him. Rodriquez was simply in the wrong place at the wrong time.

13. McQuay and Offerman, responded to the 911 dispatch. Both Sergeant McQuay and Officer Offerman had their body cameras on while responding to this call.

14. McQuay and Offerman arrived at the Geier residence 1116 Cherry Street in Evansville, Indiana.

15. The body camera footage shows that McQuay and Offerman approached from the backside of the American Legion heading towards the direction of Geier's house. Offerman was first to arrive and made verbal contact with Rodriquez, McQuay followed shortly after.

16. Upon exiting his vehicle by the American Legion, Offerman orders Rodriquez to, "Show me your hands." Rodriquez complies.

17. When Officer Offerman arrives, Rodriquez is at the back door of the residence next to 1116 Cherry Street. Rodriquez proceeds to step down from the porch and walks toward the side of the house, away from the entrance. At that point Sergeant McQuay arrives behind Officer Offerman.

18. Sergeant McQuay instructs Offerman to move forward toward Rodriquez. Rodriquez backs away from the Officers as they advance towards him.

19. Officer Offerman orders Rodriquez to get his "Hands out of your pockets." Rodriquez complies.

20. Sergeant McQuay shouts "I'm gonna shoot you man, I'm gonna shoot your ass!"

21. The body cam video then shows Officer Offerman and Sergeant McQuay shooting Rodriquez multiple times. After falling to the ground motionless, Sergeant McQuay shoots Rodriquez again.

22. According to post-mortem toxicology reports, Rodriquez had a BAC of .310. This level of intoxication delays an individual's processing of commands and actions.

23. EPD internal reports note that Rodriquez appeared to be intoxicated.

24. Rodriquez's level of intoxication made it harder for him to understand and therefore comply with the Officers' commands.

25. The Officers failed to recognize that Ed was exhibiting behavior that was indicative of a person who was intoxicated or in a mental health crisis and that he was not engaged in criminal conduct.

26. A firearm was reportedly found at the scene. The firearm was not loaded nor was there a magazine in the firearm. The magazine was also unloaded. The crime scene was altered to make it appear in crime scene photographs as though Rodriquez was holding the firearm.

27. Rodriquez did nothing to justify McQuay and Offerman's use of deadly force. Rodriquez had his hands in front of his body complying with the command to show his hands. At no time did Rodriquez brandish a gun towards the Officers or show any signs to suggest that he was a danger to himself or others. Rodriquez did not verbally address the Officers.

28. Reports falsely claimed that Rodriquez failed to comply with the Officers' commands.

29. Reports falsely claimed that Rodriquez was holding a firearm at the time the Officers shot at him.

30. McQuay and Offerman's use of deadly force was not justified under the law or circumstances and caused Rodriquez's fear, emotional distress, pain, suffering, and death.

31. EPD Operational Guideline OG 359.01 provides that an officer may use deadly force, "When necessary in the defense of an officer's own life or to prevent serious bodily injury to himself when he reasonably believes that he has used all other reasonable means at his disposal to stop the subject, or when no other reasonable means can likely succeed."

32. OG 359.01 defines reasonable belief as a "[b]elief that is so conclusive that all reasonable doubt is removed from one's mind."

33. In the course of law enforcement operations, reasonably prudent officers know that officers are expected to display an acute degree of reasoning when aiming their firearm at an individual. As the spokesperson for the EPD and City have stated that an officer only pulls his firearm if he is intending to shoot what you are pointing it at.

34. Reasonably prudent officers know they should be thoroughly familiar with such policies as use of force, taking persons into custody, and other policies where there is a greater risk of danger to officers or others, heightened risk of civil litigation and liability, or a greater risk of making mistakes that could seriously damage or be fatal to a criminal prosecution.

35. Reasonably prudent officers and law enforcement agencies also know, that of great importance to policy is the assurance that it is in compliance with applicable local, state, and federal statutory and case law and legally binding judicial administrative rulings and that at a minimum, agency policy must meet state and federal court requirements and limitations on the use of force, with the U. S. Constitution forming the baseline for the establishments of rights.

36. As stated by the IACP ("International Association of Chiefs of Police"):

- Law enforcement agencies must provide officers with clear and concise policies that establish well-defined guidelines on the use of force.

- It is essential that officers have a complete understanding of agency policy on this critical issue, regularly reinforced through training.

- Therefore, a use-of-force policy should be concise and reflect clear constitutional guidance to adequately guide officer decision making.

37. While law enforcement officers are trained to always expect the unexpected in every call for service, it is consistent with accepted police practices to respond to calls for service based on the call classification and any additional information provided by the dispatcher such as updates in the call notes as well as the officer's knowledge based on prior contacts with the involved persons.

38. Reasonably prudent officers know, understand, and are taught nationally to only use force that is objectively reasonable under the totality of circumstances and to only use that level of force that any reasonable and prudent officer would use under the same or similar

circumstances and that the examination of all instances of use of force, deadly or not, is to apply the facts and the totality of circumstances to the objectively reasonableness standard.

39. Such officers know that the use of force is to be judged from the perspective of a reasonable officer under the same circumstances without the benefit of hindsight; that officers are often required to make split-second decisions, in circumstances that are tense, uncertain and rapidly evolving; and that force that is excessive, needless and objectively unreasonable is a violation of the Fourth Amendment to the United States Constitution as well as established federal case law.

40. The National Consensus Policy and Discussion Paper on the Use of Force:

- Defines "exigent circumstances" as "those circumstances that would cause a reasonable person to believe that a particular action is necessary to prevent physical harm to an individual, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts".

- Defines "objectively reasonable" as the determination that the necessity for using force and the level of force used is based upon the officer's evaluation of the situation in light of the totality of the circumstances known to the officer at the time the force is used and upon what a reasonably prudent officer would use under the same or similar circumstances.

- Defines "serious bodily injury" as an injury that involves a substantial risk of death, protracted an obvious disfigurement, or extended loss or impairment or the function of a body part or organ.

- Defines "de-escalation" as taking action or communicating verbally or nonverbally during a potential force encounter in an attempt to stabilize the situation and

reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presence, advisements, warnings, verbal persuasion, and tactical repositioning.

- "Use only the amount of force that is objectively reasonable to effectively bring an incident under control, while protecting the safety of the officer and others."
- "The decision to employ any use of force, including the use of firearms, may be considered excessive by law and agency policy or both, if it knowingly exceeded a degree of force that reasonably appeared necessary based on the specific situation."
- "De-escalation is not a new concept and has been part of officer training for decades."
- "Another de-escalation technique is tactical repositioning. In many cases, officers can move to another location that lessens the level of danger."
- "By increasing the distance from the individual, officers greatly reduce the risk to their safety and can explore additional options before resorting to a use of force, notwithstanding the need to control the threat to others."

41. McQuay and Offerman breached the standard of care and generally accepted law enforcement training and practices during their contact with Rodriquez. But for the aforementioned conduct, Rodriquez would not have suffered injuries or lost his life.

42. The Defendants are not entitled to qualified immunity as McQuay and Offerman's conduct violated constitutional rights clearly established at the time of the incident.

43. At all pertinent times, McQuay and Offerman were employed by Chief Billy Bolin and the EPD acting under the color of state law and in the course and scope of employment. Chief

Bolin and the EPD are responsible for the wrongful acts that McQuay and Offerman committed within the scope of their employment pursuant to respondent superior.

44. Pursuant to 42 U.S.C.A. § 1983 and to the extent that Chief Bolin, the City, or the EPD claim that McQuay and Offerman's actions are criminal, clearly outside the scope of their employment, malicious, or willful and wanton, Plaintiffs are also suing McQuay and Offerman in their individual capacities.

45. Rodriquez's death was without legal justification and objectively unreasonable under the totality of the circumstances. Pursuant to 42 U.S.C.A. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, Defendants McQuay and Offerman owed Rodriquez a duty to act prudently and with reasonable care and to otherwise avoid the use of unnecessary, unreasonable, excessive, and/or deadly force. Defendants McQuay and Offerman violated Rodriquez's right to be free from punishment and deprivation of life and liberty without due process of law and to be free from deliberate indifference to all of those rights by unjustifiably and fatally shooting him.

46. The Defendants knowingly, falsely, and publicly stated that the Officers and others were in a dangerous situation and/or were justified in using deadly force. Statements made in the record and/or publicly that represented Rodriquez to be at fault for his own death were voiced and announced prior to completion of a complete and objective investigation. A complete and objective investigation of the Defendants' actions has never been done.

47. At all times relevant, the City, EPD, and Chief Bolin, and its officers, policymakers, and supervisors, pursued policies, practices, and customs that were a direct and proximate cause of the unlawful and unconstitutional acts alleged here and were the result of deliberate indifference. The policies include, but are not limited to:

  a. Failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers, including McQuay and Offerman, who are known or should have been known to engage in improper use of excessive and deadly force;

  b. Employing a code of silence where officers and supervisors cover up the use of excessive force by fabricating accounts in police reports, internal affairs investigations, and statements to the media, all of which are designed to falsely exonerate officers and protect the EPD and Chief Bolin from potential civil liability;

  c. Creating and implementing procedures that allow for and promote the use of excessive force in unwarranted and under unjustified circumstances;

  d. Failing to adequately investigate in-custody civilian deaths and failing to discipline officers involved;

  e. Failing to properly use, maintain, and monitor body and dashboard video and audio recording equipment; and

  f. Other failures yet to be discovered.

48. McQuay and Offerman breached their duty and acted with recklessness, willfulness, and wantonness and with deliberate indifference as to whether harm would result. The acts and/or omissions and/or conduct of McQuay and Offerman as alleged constitute gross negligence.

49. As a direct and proximate result of McQuay and Offerman's actions, omissions, and deliberate indifference, Rodriquez suffered severe physical pain, injury, emotional distress, mental anguish, untimely and wrongful death, and other damages and injuries resulting in his death.

50. But for the aforementioned conduct of the Defendants, Rodriquez would not have suffered severe pain and suffering or lost his life.

## COUNT I

## VIOLATION OF FOURTH AMENDMENT RIGHTS, 42 U.S.C. § 1983

51. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

52. When evaluating reasonableness of force used by the Officers, the severity of the crime at issue, whether Rodriquez posed an immediate threat to the safety of Officers, or others and whether Rodriquez was resisting arrest or attempting to evade arrest by flight are the factors to be considered.

53. There is no evidence that shows that the Officers possessed reasonable suspicion or probable cause to believe that Rodriquez had committed any crime prior to or during their response to his 911 call. A reasonably prudent officer on the scene would not conclude that Rodriquez was involved in any criminal conduct during his contact with the Officers. As such, this factor must weigh in the favor of Rodriquez as there is no evidence that Rodriquez had or was committing a crime.

54. Reasonably prudent officers know as instructed in *Evaluating Police Uses of Force*, when analyzing the three aspects of threat – ability, opportunity, and intent, each aspect must be supported by specific, articulable observations. It cannot be concluded that there was a threat in the absence of articulated details and circumstances that would have led a reasonable officer to conclude, at the time the force was used, that the individual against whom force was used had the ability, opportunity, and intent to cause physical harm to the officer or others. Such officers also understand the difference between risk and threat makes it clear that a use of force

cannot be predicated on an officer's speculative articulation of what an individual might have done or the threat that could have existed if the individual were to take certain actions.

55. The existence of a bona fide threat must be predicated on an officer's articulation of details and circumstances that would lead a reasonable officer to conclude that the individual was physically capable of causing harm, was in a position to physically inflict that harm, and had manifested the apparent intent to do so. For a use of force to be constitutionally permissible, an officer must have an objectively reasonable belief that something is happening not just that something might possibly happen. Reasonably prudent officers know that officers must be able to articulate why the situation presented a threat as that term is properly understood.

56. As there is no evidence that Rodriquez had committed a crime nor was he under arrest, Rodriquez could not have been actively resisting arrest or attempting to evade arrest by flight.

57. A reasonable officer would conclude that Rodriquez was not resisting arrest and was not attempting to evade arrest by flight at any time nor did he pose a risk of flight at the time that the Officers used deadly force against him. A reasonable officer would conclude that Rodriquez followed the Officers' orders to take his hands out of his pockets, and that the Officers never gave any additional orders, commands, or warnings to Rodriquez before they shot and killed him.

58. An objectively reasonable officer would conclude, based on the totality of circumstances, that the force used by Officers was unreasonable and excessive and not consistent with generally accepted police practices regarding the use of deadly force.

59. The Officers did not demonstrate good judgment, nor personal and professional self-control and did not exercise proper restraint or apply reasonable de-escalation tactics such as stepping back and away from Rodriquez.

60. It was solely the deliberate and escalating actions of Officers which unnecessarily turned this routine response to a 911 call into an unreasonable and unnecessary use of deadly force. Instead of creating distance between themselves and Rodriquez through tactical repositioning, the Officers chose to deliberately and intentionally confront Rodriquez and then shoot and kill him.

61. For all of the foregoing reasons, the Officers' use of deadly force by shooting Rodriquez several times was excessive, was committed in bad faith, was needless, and was objectively unreasonable as the force was a departure from and not consistent with generally accepted practices regarding the use of force.

62. As a result of the Officers' conduct, Rodriquez experienced conscious pain and suffering.

63. As a result of the Officers' conduct, Rodriquez died.

64. As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to damages in an amount to be determined by jury.

65. Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

66. Plaintiffs are entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT II

### MONELL AND CANTON LIABILITY (42 U.S.C. § 1983)

67. Plaintiffs adopt and incorporate by reference paragraphs 1 through 66 above as if fully set forth herein.

68.     Reasonable law enforcement agencies and officers know that it is the duty of individual officers to determine the appropriate use of force based on the facts and circumstances of each situation. Reasonable officers also know that the United States Supreme Court held in *Graham v. Connor*, 490 U.S. 386 (1989), that law enforcement use of force cases are to be judged by an objective reasonableness standard based on the Fourth Amendment. Other factors to be considered included the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

69.     Based on the plain meaning of the language in the EPD Use of Force policy, it is clear that the EPD failed to adequately train their officers of the objective reasonableness standard regarding the use of force and this is unreasonable, was a deliberate choice, and is not consistent with generally accepted police practices regarding use of force training. Reasonable law enforcement agencies and officers know that law enforcement training supports and reinforces policy. Based upon EPD officers' conduct in this and other similar cases, it is reasonable to conclude that the EPD's training on use of force does not address the objective reasonableness standard.

70.     Reasonably prudent officers and agencies know as stated by the IACP in their Concepts and Issues Paper on Investigation of Officer Involved Shootings and Other Serious Incidents:

- All officers not just those responsible for investigation – should have an understanding of the steps that must be taken in response to an officer involved shooting.

- Investigations of officer involved shootings should be designed to accomplish several important goals.  First, it must be determined whether involved officers, in

the course of their duties, took measures that were objectively reasonable under the circumstances of the incident. Second, the investigation must be capable of determining whether involved officers acted in accordance with agency policy, procedures, rules, and training.

- Results of the foregoing investigations have a direct bearing on possible criminal charges or administrative discipline and liability they may attach to the involved officers, the agent or both.

- The goal of the administrative investigation is to determine whether violations of agency policy, procedures, rules, or training occurred and, if so, whether corrective action should be recommended or modifications to policy, procedures or training should be considered.

71. The City, EPD, and Chief Bolin failed to conduct a reasonable administrative investigation of the Officers' use of deadly force to determine whether violations of agency policy, procedure, rules, or training occurred and, if so, whether corrective action should be recommended or modifications to policy, procedures, or training should be considered, that such failure is unreasonable and not consistent with generally accepted police practices regarding the administrative investigation of an officer involved shooting.

72. The City, EPD, and Chief Bolin are vested with all the powers connected with and incident to the establishment, maintenance, appointment, removal, discipline, control, and supervision of its police force.

73. The City, EPD, and Chief Bolin have final policymaking authority with regard to establishing written policies and training programs governing the conduct of EPD officers performing policing functions on behalf of the EPD.

74. The City, EPD, and Chief Bolin established and/or approved EPD's written policies and training governing the conduct of EPD officers performing policing functions.

75. The written policies and training established and/or approved by the City, EPD, and Chief Bolin constitute the official policy of the City and the EPD and were the moving force behind and caused Rodriquez's injuries and death.

76. The City, EPD, and Chief Bolin had knowledge of the unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

77. The City, EPD, and Chief Bolin made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the unconstitutional patterns and practices and were deliberately indifferent to and/or tacitly authorized the same.

78. On or prior to November 8, 2020, the City, EPD, and Chief Bolin, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

79. By refusing to adopt and enforce policies that deter the use of excessive force and provide for meaningful investigations of complaints of the use of excessive force, the City, EPD, and Chief Bolin created an environment that allowed the Officers to believe that they could act with impunity and without fear of retribution.

80. The City, EPD, and Chief Bolin failed to properly train or modify the training to its officers, including but not limited to, matters related to the reasonable and appropriate use of force during investigations, detentions, and arrests, and intervention in the excessive use of force by fellow officers.

81. The use of force is a usual and recurring situation with which enforcement officers and other agents encounter on a regular basis.

82. With deliberate indifference to the rights of citizens, the City, EPD, and Chief Bolin failed to provide adequate training to its officers on the use of force, resulting in the personal injury to and death of Rodriquez.

83. The City, EPD, and Chief Bolin were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

84. As such, The City, EPD, and Chief Bolin were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

85. The failure to train and/or to appropriately modify training constituted official policies, practices, or customs.

86. The failure to train and/or to modify its training was a proximate cause of the acts and omissions the Officers made toward Rodriquez.

87. As a result of the City, EPD, and Chief Bolin's conduct, Rodriquez experienced conscious pain and suffering and died.

88. As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to damages in an amount to be determined by jury.

89. Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

90. Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III

## COMMON LAW NEGLIGENCE

91. Plaintiff incorporates by reference paragraphs 1 through 90 as if fully set forth herein.

92. At all times relevant to this case, the Officers acted within the scope of their duties as employees of the City and EPD, and they are legally responsible for the Officers' actions.

93. The Officers owed Rodriquez a duty to exercise reasonable care.

94. The Officers breached their duty of care to Rodriquez.

95. The Officers' breach of duty was not excused by law.

96. As a proximate cause of the Officers' acts and omissions, Rodriquez sustained serious bodily injury and endured great pain, suffering, mental anguish, and emotional distress from the time Officers arrived on the scene until his death.

97. As a result of the Officers' conduct, Rodriquez died.

98. As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to recover damages in an amount to be determined by a jury.

99. Punitive damages are available and are hereby claimed.

100. Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees.

## COUNT IV

## WRONGFUL DEATH

101. Plaintiff incorporates by reference paragraphs 1 through 100 above as if fully set forth herein.

102. Plaintiff brings this claim for wrongful death pursuant to Ind. Code 34-23-1-1, *et seq*.

103. Plaintiff's claims under state law are actionable under the Indiana wrongful death statute.

104. Rodriquez was wrongfully injured and killed by Officers. As a direct result of the Defendants' wrongful acts, the Estate is entitled to recover damages pursuant to Ind. Code 34-23-1-1 et seq.

105. As a result of the Officers' conduct, Rodriquez experienced conscious pain and suffering.

106. As a result of the Officers' conduct, Rodriquez died.

107. As a direct and proximate result of the acts and omissions described herein, Plaintiff is entitled to recover damages in an amount to be determined by a jury.

## COUNT V

## RESPONDEAT SUPERIOR

108. Plaintiff adopts and incorporates by reference paragraphs 1 through 107 above as if fully set forth herein.

109. The City and the EPD are liable for all common law torts their employees commit in the scope of their employment under the doctrine of respondeat superior.

110. At all times discussed in and relevant to this complaint, the Officers were employees of the City and the EPD.

111. At all times discussed in and relevant to this complaint, the Officers acted within the scope of their employment.

112. If the Officers are found liable to the Plaintiffs for damages, the City and EPD are also liable to the Plaintiffs under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A. A money judgment against the Defendants for compensatory, special, and punitive damages, together with costs and disbursements, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

B. A money judgment against the Defendants for damages recoverable under IC 34-23-1-1 et seq.

C. A money judgment against the Defendants for damages at common law.

D. For such other and further relief as this Court deems just and equitable.

## PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted,

Date: October 31, 2022

*/s/Mark E. Miller*
Mark E. Miller
Attorney No. 10458-82
Mark Miller Law Office
915 Main Street – Suite 203
P.O. Box 3009
Evansville, IN  47730
mmiller@indianalawonline.com
Phone:  (812) 303-3444

*Attorney for Plaintiffs*